[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION FOR CONTEMPT AND DEFENDANT'S MOTION TO MODIFY
On September 25, 2001, the plaintiff filed a motion alleging that the defendant was in contempt of court for failing to make periodic alimony payments. On October 16, 2001, the defendant filed a motion to reopen and modify the dissolution judgment. In that motion, the defendant requested a modification in the amount of his alimony payments and the elimination of court orders requiring him to maintain medical insurance coverage and life insurance coverage for the benefit of the plaintiff.
The court heard both motions simultaneously at an evidentiary hearing which was conducted March 5-6, 2002. The court has carefully considered all of the evidence introduced at hearing, and the parties' financial affidavits. The court finds that the facts set forth below were proven at hearing.[1]
 FACTUAL FINDINGS
The parties' 20-year marriage was dissolved by the court (Brennan, STRJ) on December 16, 1998. The terms of a written agreement which the parties executed on that date were incorporated by reference into the judgment and made orders of the court.
The judgment provided that the defendant would pay periodic alimony to the plaintiff at the rate of $700.00 per week. The alimony payments were to terminate upon the death of either party, the plaintiff's remarriage, or the plaintiff's 65th birthday (June 8, 2016). The term of the alimony payments was non-modifiable.
The dissolution judgment also mandated that upon the expiration of the plaintiff's medical insurance benefits under COBRA, the defendant was to secure the successor medical insurance coverage for the plaintiff that was "comparable to the coverage that he maintains for himself." The defendant was ordered to pay up to $6,000.00 per year in premiums for the plaintiff's medical insurance.
In addition, the judgment required the defendant to secure a life insurance policy insuring his life with a face amount of $500,000.00, and to name the plaintiff as the beneficiary thereof. The terms of the judgment also provided that the face value amount of that coverage was to decrease by $28,000.00 per year during the 18-year period that the CT Page 3356 defendant paid spousal support to the plaintiff.
At the time of dissolution the defendant, who was operating a health club and a real estate business, submitted a sworn financial affidavit to the court. That affidavit indicated that the defendant received net income of $1,701.00 per week, and paid total weekly expenses of $2,123.00. The affidavit also indicated that the defendant had total assets of $493,591.00 and owed total liabilities of $100,537.00.
On an annualized basis, the defendant's net income on December 16, 1998 was $88,452.00, and his total expenses were $110,396.00. As noted above, the defendant agreed at the dissolution hearing to pay periodic alimony to the plaintiff in the amount of $700.00 per week, or $36,400.00 annually.
In her December 16, 1998 financial affidavit, the plaintiff stated that she was receiving no wages. Her only income was the weekly sum of $675.00 which the defendant paid to her as pendente lite alimony. Plaintiff's weekly expenses at that time were $1,026.00. Her total assets were $436,485.00, and her total liabilities were $90,119.00.
When the dissolution judgment entered in 1998, the defendant had extensive real estate holdings which were in foreclosure. subsequently, the defendant, who holds a college degree in finance, negotiated a multi-million dollar settlement of the foreclosure matters. This "workout" enabled him to liquidate his real estate holdings and receive a net profit of $2,000,000.00.
The defendant utilized the $2,000,000.00 to engage in the extensive trading of mutual funds, securities and options during the past several years. During this time, he also frequently made "margin" transactions in the financial markets, using borrowed money to purchase some of the securities which he acquired.
The defendant has lost in excess of $1,500,000.00 in the financial markets during the past several years.
The defendant claimed at hearing that the 1,400-member health club which he operates in New York City is currently experiencing financial difficulties. He claimed that the business, which generated a net profit of $50,000.00 in 2000, is now in debt and operating at a loss. As a result, the defendant claims that he no longer receives a salary from the health club business.
In his current financial affidavit, the defendant indicated that he has expenses of $2,852.00 per week. He lists total assets of $999,007.00 CT Page 3357 which includes the equity in his home ($217,000.00); two mutual fund accounts ($369,877.00); life insurance ($15,729.00); an individual retirement account ($226,001.00); and his interest in the health club and a family owned beach club ($170,400.00).
On her March 5, 2002 financial affidavit, the plaintiff claimed that she is not presently receiving any salary from her position as a personnel recruiter with her sister's employment business. The plaintiff's affidavit listed alimony of $646.00 per week[2] and weekly interest of $346.00. The plaintiff's expenses are $1,463.00 per week. Her total assets are now $539,670.00, and her total liabilities amount to $122,000.00.
In July 2001, the defendant telephoned the plaintiff and informed her that he could no longer afford to make alimony payments. The defendant has not paid any money to the plaintiff since July 31, 2001. Thirty-five weeks have transpired between August 1, 2001 and the present date.
Sometime last summer, the defendant also stopped providing medical insurance coverage for the plaintiff. He also recently allowed a $500,000.00 life insurance policy (which named his former wife as beneficiary), to lapse. The defendant testified at hearing that the medical insurance coverage had been obtained through his real estate business, which has since closed.
In her motion for contempt, the plaintiff alleges that the defendant's failure to pay alimony constitutes wilful defiance of the court's order. The defendant counters that his lack of income and trading losses render him financially unable to pay alimony. He also maintains that his present financial problems constitute a substantial change in circumstances which warrants the termination or substantial reduction of his alimony payments, and the elimination of his obligation to provide medical insurance and life insurance coverage for the benefit of the plaintiff.
 DISCUSSION
The court finds that the financial affidavits submitted by both parties on March 5, 2002 contained disconcerting inaccuracies.
The affidavit which the plaintiff filed on March 5th listed total assets of $382,005.00. However, during the plaintiff's testimony at hearing, it became apparent that the plaintiff had failed to list certain investment accounts on her affidavit. The court suspended testimony and ordered the plaintiff to file an amended financial affidavit the following morning. Her amended financial affidavit indicated that the plaintiff had total assets of $539,670.00. CT Page 3358
Although the plaintiff's testimony revealed that she was somewhat confused about her assets and their values, she was under an affirmative duty to employ care and due diligence in the preparation of the financial affidavit which she submitted to the court.
Additionally, the court questions the veracity of the plaintiff's claim that she earns no wages. It is illogical that the plaintiff, who had prior employment in secretarial and administrative assistant positions, would continue to work as a personnel recruiter in her sister's employment agency without generating any income. The court finds that the plaintiff, who appears to be healthy and capable, is presently able to obtain some type of paying job commensurate with her past employment history.
On his March 5, 2002 financial affidavit, the defendant listed the total current value of his interest in a family-owned beach club as $96,400.00. He also claimed in that affidavit that his interest in the New York City health club business is worth $74,000.00. The financial affidavit noted that those valuations were based upon 1998 appraisals of the beach club and health club entities. The values attributed to those assets on the defendant's current financial affidavit are exactly the same values which he ascribed to them on his December 16, 1998 financial affidavit. The defendant apparently made no effort to secure updated appraisals or current market values for those assets in connection with the preparation of his financial affidavit for this hearing. He was under an affirmative duty to do so. Based on credible evidence presented at hearing, the court finds that the defendant undervalued his interest in the beach club and health club businesses on his March 5, 2002 financial affidavit.
The court has considered the deficiencies in each party's financial affidavit in assessing the credibility of both the plaintiff and the defendant in this matter.
Based upon the evidence presented at hearing, the court finds that the defendant has suffered financial losses in the securities markets. Although he realized $2,000,000.00 in net profit from his real estate ventures after the dissolution, he has lost in excess of $1,500,000.00 since then in market trading.
The defendant listed total assets of $999,007.00 on his March 5, 2002 financial affidavit. The total assets indicated on his December 16, 1998 financial affidavit were $493,591.00.[3] Accordingly, despite the defendant's recent setbacks in the financial markets, the overall value of his assets have increased by more than half a million dollars since CT Page 3359 the date of dissolution. Furthermore, as noted above, the court finds that the total amount of the defendant's assets is greater than $999,007.00, since the defendant's beach club and health club holdings were undervalued on his current financial affidavit.
The defendant individually owns more than 96 percent of the New York City health club business. The defendant testified that the health club owes debts of $150,000.00, including between $75,000.00 and $80,000.00 to the facility's landlord for four or five months past due rent. The health club business lost approximately $125,000.00 in 2001, after generating a net profit of approximately $50,000.00 in 2000.
The defendant claimed at hearing that as a result of the business' operating losses, he has not been receiving a salary from the health club.
The court finds it likely that the health club's profitability has declined recently. However, based upon all the evidence presented at hearing, the court also finds that the defendant's financial problems are not as dire as he has claimed.
The court notes, for example, that the health club business has continued to regularly pay $315.00 per week toward the defendant's personal expenses. This amounts to a total of $16,380.00 in annual payments which are made on the defendant's behalf. One of the expenses is for a Mercedes Benz automobile which the corporation leases for the defendant at the rate of $786.00 per month. The payments on that lease are current.
The defendant recently received $40,000.00 as a distribution of the profits from the family-owned beach club. of that sum, $20,000.00 was for profits earned in the year 2000, and $20,000.00 was for 2001 profits.
The monthly mortgage payment on the defendant's six-bedroom home is $3,612.00 per month. The defendant pays this expense personally. Despite the defendant's claim that he is not receiving any salary from the health club business, the defendant is current on the mortgage. During the period between August 1, 2001 and February 28, 2002, the defendant has made seven monthly mortgage payments for a total expenditure of $25,284.00. He is also current on the real estate taxes which are assessed on that property, and he pays a maid to clean the home.
The defendant's March 5, 2002 financial affidavit indicates that his total weekly expenses are $2,852.00. of that total sum, $700.00 per week is for the alimony which the defendant is not currently paying. As noted above, $315.00 per week of those expenses are paid by the health club CT Page 3360 business. Subtracting the total of $1,015.00 for those two sums from the listed expenses of $2,852.00, the current expenses actually paid each week by the defendant are $1,837.00. The defendant, despite his claim that he receives no salary, is current on those weekly obligations.
Therefore, during the period between August 1, 2001 and the date of hearing, the defendant personally paid $60,621.00 toward his living expenses, and his business paid an additional $10,395.00 of expenses on his behalf.
The defendant maintained at hearing that he was able to satisfy those expenses by selling assets and borrowing money. His current financial affidavit reflects a debt of $95,000.00 which is purportedly owed for a personal loan from his sister.
The court finds, however, that the defendant's ongoing ability to maintain a comfortable lifestyle contradicts his claim that he is bereft of regular income and in a financially precarious position. The defendant's current financial affidavit indicates no substantial change in his personal expenses since the date of dissolution. With the exception of his termination of alimony payments to the plaintiff, the defendant has made no effort during the past seven months to decrease his level of spending, or to live more frugally. The court finds it illogical that the defendant, who possesses a degree in finance, would continue to engage in personal spending of $1,837.00 per week over an extended period of time during which he reportedly received no salary, and was allegedly operating at a net weekly loss of $525.00 per week.
 DISCUSSION AND FINDINGS (MOTION FOR CONTEMPT)
"In order to constitute contempt, a party's conduct must be wilful." (Internal citations omitted) Eldridge v. Eldridge, 244 Conn. 523, 529,710 A.2d 757 (1998). "The inability of a party to obey an order of the court, without fault on his part, is a good defense to the charge of contempt." (Internal citations and internal quotation marks omitted).Eldridge v. Eldridge, supra p. 532.
In the case at bar, the defendant unilaterally ceased paying alimony to the plaintiff at the end of July 2001. He has made no alimony payments whatsoever to the plaintiff since then. The motion for modification was filed on October 16, 2001. The court has found that the defendant suffered significant losses in the stock market and that his business has recently experienced financial difficulty. However, the court cannot find that the defendant has been financially unable during the past several months to make substantial efforts to comply with the court's alimony order. The defendant's total assets have increased by more than half a CT Page 3361 million dollars since the date of dissolution. The court also finds that despite the defendant's claimed lack of salary, he has maintained a comfortable lifestyle and has incurred more than $70,000.00 in personal expenses during the same period of time when he did not make any spousal support payments to the plaintiff.
The court finds that the defendant had the financial ability to make significant efforts to satisfy the alimony order between July 31, 2001 and the date of hearing. He elected not to do so. The court finds, based on clear and convincing evidence, that the defendant's failure to make any alimony payments at all during the past seven months constituted wilful defiance of the court's alimony order. Accordingly, the court finds the defendant in contempt. The court will set an arrearage figure and issue orders with respect to its payment below.
The defendant's failure to maintain life insurance and medical insurance coverage was not alleged in the plaintiff's September 25, 2001 motion for contempt. Those issues were raised by the defendant in his October 16, 2001 motion to modify. The court does not make any finding of contempt with respect to the defendant's alleged failure to provide those coverages. The court will address those issues below in its ruling on the defendant's modification motion.
 DISCUSSION AND FINDINGS (MOTION TO MODIFY)
As part of his motion to reopen and modify judgment, the defendant asks to he be relieved of the obligations to provide medical insurance coverage for the plaintiff and to secure life insurance coverage in the amount of $500,000.00 for the benefit of the plaintiff.
As an initial matter, the court must determine if it has jurisdiction to act on those requests.
Conn. Gen. Stat. § 46b-86 (a) permits the court to modify final orders or judgments for the payment of periodic alimony and support, but specifically excludes the modification of property assignment orders. Accordingly, the court must analyze the nature of the medical insurance and life insurance awards to ascertain if the orders are legally subject to modification.
The agreement which was incorporated into the dissolution judgment clearly stated that the defendant's payments of medical insurance premiums ". . . shall be considered as additional alimony." The court finds that the order requiring the defendant to maintain medical insurance for the plaintiff was in the nature of alimony and, therefore, is subject to modification under C.G.S. § 46b-86 (a). CT Page 3362
Similarly, the judgment indicates that the defendant's obligation to maintain life insurance coverage would continue during the term of his obligation to pay alimony. The judgment also provided that the face amount of the coverage would be reduced each year as the total amount of the defendant's spousal support obligation decreased. Based on the foregoing, the court also finds that the life insurance order was intended to secure an alimony obligation. Hence, it, too, is modifiable. The court finds that it has jurisdiction.
The court must next determine whether or not the defendant has proven a substantial change in circumstances which justifies the reduction or elimination of those financial obligations. The burden of demonstrating a substantial change in circumstances rests upon the moving party. Richardv. Richard, 23 Conn. App. 58, 62, 579 A.2d 110, 112 (1990)
The defendant's financial affidavit indicates that his assets have increased by more than $500,000.00 since the date of dissolution. He now possesses more than one million dollars in total assets.
The defendant claimed at hearing that the group medical insurance policy under which he insured the plaintiff was terminated when he dissolved a real estate management company through which the coverage had been purchased. The defendant testified that after the corporation dissolved, he was forced to find a new health insurance policy for himself. The defendant's March 5, 2002 financial affidavit indicates that he now pays $434.00 per week for his medical and dental insurance. Although the defendant claims he cannot afford to purchase health insurance for the plaintiff, he did not offer any substantive evidence at hearing concerning the cost of comparable health insurance for his former spouse.
The defendant recently allowed a $500,000.00 life insurance policy to lapse when the annual premium came due. Here, too, there was a paucity of evidence presented at hearing concerning the premium amount for that coverage, the defendant's insurability, or what it would now cost to obtain similar coverage.
The defendant acted unilaterally in terminating both coverages. Given the fact that the defendant has more than one million dollars in total assets, the court finds that he has the financial ability at present to continue to maintain both the health insurance and life insurance coverages. He did not prove a substantial change in financial circumstances. Accordingly, the defendant's motion to reopen and modify the judgment by eliminating the requirement that he provide life insurance and health insurance coverage for the benefit of the plaintiff CT Page 3363 is hereby denied. The court will issue orders pertaining to both coverages below.
The defendant's motion to modify also seeks the elimination or reduction of his weekly alimony payments.
Each party submitted a financial affidavit to the court on March 5, 2002 indicating that they presently receive no salary. Based on the evidence presented at hearing, the court does not accept those representations and finds that the affidavits do not accurately reflect either party's present capacity to earn income.
Because the court does not accept the parties' representations regarding salary, the court will impute a present earning capacity to each party in deciding the motion to modify.
Based on all of the evidence presented, the court finds that the plaintiff has the present capacity to generate total gross income of approximately $38,000.00 per annum. The court notes that more than three years have passed since the date of dissolution. The plaintiff claims to work on a commission basis as a personnel recruiter, but indicates that she is not receiving any income whatsoever in that capacity. The plaintiff appears to be healthy and capable, and has held several jobs in the past.
Based on the evidence presented at hearing concerning the plaintiff's employment history, the court finds that she has the present capacity to earn gross income of $20,000.00 per year, or $384.61 per week. In addition, the plaintiff earns approximately $18,000.00 per year in interest income. Adjusting the combined gross income figure of $38,000.00 for state and federal tax, medicare, and social security deductions, the court finds that the plaintiff has the present capacity to generate net annual income of $28,500.00, or $548.00 per week.
The plaintiff's financial affidavit on the date of dissolution indicated that she received no salary or interest income. The only income listed on her December 16, 1998 affidavit was the payment of $675.00 per week which she received as pendente lite alimony from the defendant. Based on the foregoing, the court finds that the plaintiff's present earning capacity constitutes a substantial change in her financial circumstances since the date of dissolution.
The court finds that the defendant earns, or has the present capacity to earn, approximate total gross income of at least $100,000.00 per year. The court bases this finding on the following: CT Page 3364
1. The level of the defendant's annual personal spending, which exceeds $100,000.00 per year;
2. The evidence that the defendant historically receives $20,000.00 each year from the beach club profits;
3. The amount of money remaining in the defendant's investment accounts, which the court finds could generate interest and dividend income of at least $18,000.00 per year if prudently invested;
4. The evidence that the defendant's health club business has continued to pay $315.00 per week, or $16,380.00 per year, toward his personal expenses; and
5. The evidence concerning the defendant's college degree and extensive business and investment expertise, which leads this court to conclude that he could earn a gross salary of at least $60,000.00 per annum.
Factoring adjustments for state and federal tax, medicare and social security deductions, the court finds that the defendant earns, or has the present capacity to earn, net income of approximately $70,000.00 per year. At the time of dissolution, the defendant's financial affidavit indicated net annual income of $88,452.00.
The court finds that the defendant's current level of income is lower than the amount of his net income on the date of dissolution, and is a substantial change in his circumstances.
The court further finds that the increase in the plaintiff's earning capacity, and the decrease in the defendant's actual income or present earning capacity warrant a modification of the court's prior alimony orders. The defendant's motion to reopen judgment and modify alimony payments is hereby granted. The court will set orders with respect to that modification below.
 ORDERS
1. Having.considered all of the evidence and equities in this case, the court orders, pursuant to Conn. Gen. Stat. § 46b-86, that the dissolution judgment be reopened and modified and that the defendant pay to the plaintiff as periodic alimony the sum of $500.00 per week. Said order shall be retroactive to October 22, 2001, the first full week after the date when the defendant filed the motion to modify.
2. Having found the defendant in wilful contempt for his failure to make any alimony payments whatsoever to the plaintiff, despite his CT Page 3365 financial ability to do so, the court finds that there is a total alimony arrearage owed by the defendant to the plaintiff in the amount of $19,700.00. The court bases that finding on the following calculations:
a. $700.00 per week for eleven weeks (week beginning August 6, 2001 through week beginning October 15, 2001) = $7,700.00;
b. $500.00 per week for 24 weeks (week beginning October 22, 2001 through the week beginning March 25, 2002) = $12,000.00. Total Arrearage= $19,700.00.
The court finds that the defendant has sufficient liquid assets at present to pay the arrearage sum of $19,700.00 directly to the plaintiff within forty-five days of the date of this order.
3. The court has denied the defendant's motion to reopen and modify judgment with respect to medical insurance coverage. Although the court makes no finding of contempt, the court orders the defendant to immediately provide the plaintiff with medical insurance comparable to the medical insurance which he currently possesses. The court also orders that the defendant is to immediately insure his life with a life insurance policy naming the plaintiff as the beneficiary thereof. The total face amount of said policy should comply with the judgment of the court. The court orders that the defendant shall pay all premiums due on both the medical insurance coverage and the life insurance policy, keep both coverages in full force, and provide proof that he has obtained said insurances to the plaintiff within forty-five days of the date of this order. The court finds that the defendant has sufficient liquid assets to comply with this order.
4. Pursuant to Conn. Gen. Stat. § 46b-87, the court orders that the defendant shall pay to the plaintiff, as a reasonable attorney's fee, the sum of $2,000.00, within 45 days of the date of this order. The court finds that the defendant has sufficient liquid assets to comply with this order.
5. The court orders that the parties are to exchange their annual state and federal income tax returns each year on April 15th. In addition to furnishing the actual return, the parties shall provide to each other all supporting schedules such as W-2 forms, K-I forms and 1099 forms, etc. If either party requests an extension for filing said returns, he or she is to provide all supporting documentation concerning their income to the other party on April 15th, and shall thereafter provide the actual returns as soon as they are filed.
SO ORDERED. CT Page 3366
 ___________________ DYER, J.